**TEXAS MUTUAL INSURANCE COMPANY f/k/a Texas Workers' Compensation Insurance Fund, Appellant**

v.

**Crescencio A. LERMA, deceased and Elma Lerma, beneficiary, Appellee.**

No. 04–03–00615–CV.

Court of Appeals of Texas, San Antonio.

June 16, 2004.

Rehearing Overruled Aug. 9, 2004.

Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Appellant.

Armando G. Barrera, Barrera & Barrera Law Firm, Alice, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

CATHERINE STONE, Justice.

Cresencio Lerma died on July 27, 1999. A jury found that Lerma sustained a minor cut to his arm on May 13, 1999, which was the producing cause of his death. Appellant, Texas Mutual Insurance Company ("Texas Mutual"), claims the trial court abused its discretion in admitting the testimony of Lerma's expert witness, arguing that the expert's testimony failed to establish causation and was unreliable. We agree and reverse the trial court's judgment.

### FACTUAL BACKGROUND

Lerma's wife recalled that on May 13, 1999, Lerma told her that he punctured his arm with a barbed wire at work. Lerma did not seek medical treatment for the cut or discuss it with anyone else. His family noted that his activity level and overall health began to change for the worse after May 13th. On July 14th, Lerma was admitted to a Laredo hospital because he had trouble walking and could talk only through his teeth. The doctors diagnosed Lerma with tetanus, and despite treatment, he died on July 27th. Lerma had not been immunized against tetanus. His final diagnosis at death was tetanus, respiratory failure, septic shock, system inflammatory response syndrome, pulmonary fibrosis, diabetes, right hand nerve palsy, and acute renal failure. Texas Mutual contends that after Lerma died, his family searched his work orders, found he had worked on a barbed wire fence on May 13th, and in turn inferred that Lerma cut his arm at work on May 13th.

A worker's compensation claim was filed by Lerma's wife. The claim was denied, and Lerma's wife then timely filed suit in district court in Duval County. Texas Mutual appeals this latter judgment, which found that Lerma's cut from May 13th was the producing cause of his death.

### STANDARD OF REVIEW

"To preserve a complaint that an expert's testimony is unreliable, a party must object to the testimony before trial or when it is offered." *Guadalupe–Blanco River Authority v. Kraft*, 77 S.W.3d 805, 807 (Tex.2002). Texas Mutual filed a motion to exclude Dr. Donald Mulder's testimony (Lerma's expert witness) and made several objections before he testified at trial. Texas Mutual specifically objected to the reliability of his testimony. Accordingly, Texas Mutual preserved error.

We review whether a trial court properly admitted expert testimony under an abuse of discretion standard. *State Farm Fire & Cas. v. Rodriguez*, 88 S.W.3d 313, 318 (Tex.App.-San Antonio 2002, no pet.). A trial court abuses its discretion if it acts without reference to any guiding

rules or principles. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). We must examine the substance of the expert's testimony " 'to determine if the opinion is based on demonstrable fact and does not rely solely on assumptions, possibility, speculation, and surmise.' " *Rodriguez*, 88 S.W.3d at 318 (quoting *Helena Chem. Co. v. Wilkins*, 18 S.W.3d 744, 752 (Tex.App.-San Antonio 2000), aff'd, 47 S.W.3d 486 (Tex.2001)).

■■■ The proponent of the expert bears the burden to demonstrate the expert is qualified under Texas Rule of Evidence 702, which includes showing that the expert's testimony is both relevant and reliable. *Id.* (citing *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995)). "To be reliable, the scientific evidence must be grounded in scientific method and procedure such that it amounts to more than subjective belief or unsupported speculation." *Id.* (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex.1998)). In determining the reliability of an expert's opinion, the Texas Supreme Court has provided a list of factors to apply:

> (1) the extent to which the theory has or can be tested; (2) the extent to which the technique relies upon subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses that have been made of the theory or technique.

*Id.* at 318–19 (citing *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995)). In some cases these factors may not be applicable, but the proponent must still prove the reliability of the testimony. *Id.* at 319. In such a case, we must consider whether there is too large of an "analytical gap" between the data and the expert's testimony. *Id.* (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex.1998)). It is not the trial court's responsibility to determine the accuracy of the expert's conclusions, but rather the reliability of the expert's methodology in reaching the conclusions. *Id.*

■■■ Since Texas Mutual challenges the reliability of Mulder's testimony and alleges that it constitutes "no evidence" as to causation, we must consider the reliability of the testimony under a *de novo* standard of review. *See Mo. Pac. R.R. Co. v. Navarro*, 90 S.W.3d 747, 750 (Tex.App.-San Antonio 2002, no pet.). To "constitute evidence of causation, an expert opinion must rest in reasonable medical probability." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex.1995). "Reasonable probability is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase." *Id.* In "workers' compensation cases expert medical testimony can enable a plaintiff to go to the jury if the evidence establishes 'reasonable probability' of a causal connection between employment and the present injury." *Schaefer v. Tex. Employers' Ins. Assoc.*, 612 S.W.2d 199, 202 (Tex.1980). "Further, if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty." *Merrell Dow Pharm. Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex.1997).

Dr. Mulder has been a licensed medical doctor for over thirty-five years practicing family medicine. Although he is not board certified in infectious diseases or occupational medicine, Mulder treats approximately thirty to forty patients a day re-

garding internal medicine and three to five a week regarding occupational medicine. Mulder's testimony regarding Lerma's injury is as follows:

Q. Doctor, there's been testimony in this case that on May the 13th of 1999, Crescencio Lerma, while at work, incurred a puncture wound, uh, through a barbed wire. Would that facilitate, uh, tetanus for somebody that is not immunized?

A. Certainly would.

. . .

Q. . . . What is the median time of onset after injury?

A. Harrison quotes, that 15 percent are less than 3 days, 10 percent are more than two weeks in onset.

Q. Which means what?

A. Means, you could, uh, most of the symptoms occur within the first two weeks. Predominantly in the first ten days. I say after two weeks. It really doesn't say it, but it could be an indeterminate time.

. . .

Q. Okay. Then there's no time period after 14 days? You can't do—does anybody say, "Well after certain period of time, it's impossible?"

A. I've never seen any literature to that effect.

. . .

Q. Doctor, I am going to ask you. Do you have an opinion, based on reasonable medical probability, whether the tetanus that Mr. Lerma suffered was from the puncture wound of May 13, 1999? Do you have an opinion?

A. Yes. I do. I think in my opinion, it was related to that.

Q. The tetanus was related to the puncture wound; is that what you are telling the Jury?

A. That's what I—that's—that's clinically—that's my clinical opinion.

. . .

Q. Doctor, do you have an opinion based on reasonable medical probability as to whether Mr. Lerma's death on July 27th of 1999, was caused by the cut that he received on May the 13th of 1999?

A. My clinical opinion is that, yes, this was related and this caused his death.

Q. When you say "this", what are you talking about?

A. The tetanus infection.

Lerma argues that Mulder's testimony is based on sound medical conclusions requiring little subjective interpretation, and thus constitutes some direct evidence of probative force of causal connection between injury and death.

■ Texas Mutual, however, argues this evidence is unreliable and speculative as to the cause of Lerma's death. Texas Mutual contends that there is no scientific basis for Mulder's statement that Lerma may have contracted tetanus through a cut in May whereupon the disease would have incubated for sixty days until he was admitted to the hospital in July. On cross-examination, Texas Mutual asked Mulder for scientific evidence supporting his claim for a sixty-day incubation period:

Q. Do you know of any scientific evidence that you've reviewed and can present to us today, that indicates that a person can get tetanus after more than 21 days?

A. No, I do not.

. . .

Q. The difference in time between when he incurred tetanus as indicated by the family on May 13th, to the time that of the admission and July 14th; is how many days?

A. Close to 60.

...

Q. Okay. So there's no medical testimony, no medical evidence that you would know of, that would indicate that an incubation period would be that long?

A. Not to my knowledge, sir.

The only evidence Mulder could provide in support of his theory that tetanus can incubate for sixty days was that ten percent of tetanus cases do not exhibit symptoms until after fourteen days, which theoretically can include sixty days.

In addition to the timing issue, Texas Mutual also contends Mulder's causation testimony is speculative since he could not eliminate other ways Lerma may have contracted tetanus. Dr. Mulder testified on cross-examination as follows:

Q. So, we don't have an examination of the alleged May 13th work-related injury and the other causative factors? We do know that he had bad—he had a rotten tooth; right?

A. Yes, sir.

Q. And that's a cause of tetanus; correct?

A. It can be, yes, sir.

Q. We do know that he had diabetes and that could be a cause of tetanus?

A. Yes, sir.

Q. We do know that he also could have gotten tetanus from any—

A. Anywhere at all.

Q. All right. So you've never been able to eliminate any of those potential causes that are nonwork-related; correct?

A. Correct.

Because Texas Mutual asserts a "no evidence" challenge against Lerma's causation expert, Lerma must exclude other plausible causes of the injury with reasonable certainty. *See Navarro*, 90 S.W.3d at 750.

Texas Mutual's expert, Dr. Nelson Avery (board certified in internal medicine and occupation medicine), could not eliminate any of the other potential causes either. All he could do was assess the likelihood it was one cause or another, and he found that the tetanus was least likely to have originated with the wound on May 13th. In fact, Avery said it was less than a hundredth of one percent that Lerma would get tetanus that many days later. Dr. Avery's conclusion was based on (1) evidence that the tetanus fully developed outside the twenty-one day limitation, and (2) the fact that the shorter the incubation period the more fatal tetanus is likely to be. Avery allocated about a one-third risk that Lerma's decaying teeth caused the tetanus. Regarding Lerma's diabetic condition, Avery stated there was a ten to twenty percent risk associated with getting tetanus from diabetes. Further, Avery explained that not only was he unable to eliminate the above causes, but also he was unable to eliminate any other potential infections caused by an unidentified source.

Dr. Mulder was unable to prove that it was a reasonable probability that Lerma contracted tetanus from the May 13th wound in light of the incubation period and in light of numerous other existing probable causes for the infection. *See Hernandez v. Altenberg*, 904 S.W.2d 734, 739 (Tex. App.-San Antonio 1995, writ denied) (holding expert testimony was based on reasonable medical probability where there were multiple possible causes and expert testified that one cause was more probable than the others). Mulder's reasoning that Lerma's May 13th wound caused tetanus versus diabetes or dental problems or any other source is just an inference of causation amounting to no more than conjecture or speculation. *See Schaefer*, 612 S.W.2d at 204-5. Therefore, we hold his testimo-

ny presents no evidence as to causation of Lerma's death. *See id.* (holding expert testimony provided no evidence as to causation since testimony was not based upon reasonable medical probability).

CONCLUSION

In light of the *Robinson* factors and the "analytical gap" test, Dr. Mulder's testimony that Lerma's fatal contraction of tetanus came from a cut on his arm during the course and scope of his employment approximately two months before his death is unreliable. Therefore, the trial court abused its discretion in admitting his testimony, which constitutes no evidence as to the causation of Lerma's death. We reverse the judgment of the trial court and render judgment in favor of Texas Mutual.