**MATT DIETZ CO., & Matt Dietz, individually, Appellants,**

v.

**Modesto TORRES, Appellee.**

No. 04–05–00552–CV.

Court of Appeals of Texas, San Antonio.

May 24, 2006.

Rehearing Overruled July 20, 2006.

---

**2.** Act of May 28, 2003, 78th Leg., R.S., ch. 837, § 3, 2003 Tex. Gen. Laws 2625, 2625.

Timothy Patton, Timothy Patton, P.C., San Antonio, Lawrence A. Mann, Law Office of Lawrence A. Mann and Adan A. Gonzalez, III, Jones & Gonzalez, P.C., Laredo, for appellants.

Jaime A. Gonzalez, Jr., Gina M. Benavides, Gonzalez & Associates Law Firm, P.C., McAllen, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

The primary issue on appeal is whether the plaintiff in the underlying suit, Modesto Torres, produced more than a scintilla of evidence that his injuries were proximately caused by the alleged negligence of Matt Dietz Co. and Matt Dietz, individually, (hereinafter Dietz collectively). The trial court overruled Dietz's numerous objections to Torres' expert testimony and denied Dietz's motion for judgment notwithstanding the verdict. Because there is no evidence that Dietz's negligence proximately caused Torres' injuries, we reverse the trial court's judgment and render in favor of Dietz.

### BACKGROUND

This appeal arises from a judgment in which the jury found that negligence of Dietz proximately caused Torres' injuries and awarded Torres $3,000,000 for damages sustained in the past and $3,000,000 for future damages. Dietz conducts farming operations in Zapata County and employed Torres from around 1987 to 1998. Throughout this period, Torres primarily served as a foreman for Dietz on a farming operation of four tracts while living on one of these tracts. Undisputedly, Torres was exposed to some pesticides by handling and mixing these products.[1] However, the parties dispute the degree of exposure to these chemicals and whether Dietz provided Torres safety equipment or training to handle these chemicals.

In July 1998, Torres was diagnosed with laryngeal cancer. Subsequently, Torres filed suit against Dietz for negligence and gross negligence claiming that Dietz's failure to provide protective equipment for

---

1. Hereinafter pesticides, herbicides, fungicides, and insecticides are referred to as pesticides, collectively, unless otherwise stated.

the handling of dangerous chemicals proximately caused his laryngeal cancer. Torres died less than two months after the jury returned the verdict.

On appeal, Dietz contends that this Court should reverse the trial court's judgment and render judgment that Torres take nothing because there is no evidence of either causation or negligence. Alternatively, Dietz claims this Court should reverse the trial court's judgment and remand for a new trial because an unsupported element of damages was included in the broad-form-future-damages submission or the jury's award of future damages is grossly excessive.

## LEGAL SUFFICIENCY REVIEW OF CAUSATION

Dietz claims there is no evidence that it proximately caused Torres' laryngeal cancer. Specifically, Dietz asserts the evidence cannot support a finding of causation because: (1) Torres' experts' testimony on causation lacks a scientifically reliable foundation, (2) Torres' scientific studies fail to establish a statistically significant association between exposure to pesticides and laryngeal cancer, and (3) no other scientifically accepted methodology was used to establish causation. Torres asserts that his experts' testimony, in conjunction with the scientific studies and their differential diagnosis, establishes some evidence of causation.

### A. The Law on Causation

#### 1. *Plaintiff's More Likely Than Not Burden of Proof*

 The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). The elements of proximate cause are cause in fact and foreseeability. *Id.* "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it,

the harm would not have occurred." *Id.* However, "cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible." *IHS Cedars Treatment Center, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex.2004). Thus, Torres needed to establish that it is more likely than not that he would not have suffered from his injuries but for Dietz's alleged negligence and that his exposure to these chemicals was a substantial factor in bringing about his laryngeal cancer. *See Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 275 (Tex.2002) (reversing jury verdict for plaintiff because evidence did not establish that it was more probable than not that plaintiff would not have been injured but for defendant's failure to provide ordinary protective gear); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991) ("In order to be [the proximate cause] of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent.... [T]his is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.").

#### 2. *Proof of Causation in Chemical Exposure Cases*

Generally, however, in chemical exposure cases there will be no direct evidence of causation. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 715 (Tex.1997). In *Havner*, the Texas Supreme Court considered whether the plaintiffs introduced legally sufficient evidence that exposure to a given substance increased the risk of a particular injury when direct scientifically reliable evidence of causation was missing. *Id.* In this context, the court explained that the plaintiff is mostly limited to proving causation based on circumstantial evidence in the form of scientific studies. *Id.*

Relying on epidemiological studies, the plaintiffs in *Havner* attempted to establish

a causal link between a limb reduction birth defect with the drug Bendectin.[2] *Id.* at 724–725. The Texas Supreme Court required that Havner's epidemiological studies establish more than a doubling of the risk that this birth defect, when compared to the same birth defect in an unexposed population or control group, was attributable to the mother's Bendectin ingestion during pregnancy. *Id.* A greater than 2.0 relative risk factor statistically reflects a more than doubling of the risk. In addition, to support causation, the court stated that an epidemiological study must be statistically significant at the 95% confidence level and the confidence interval may not include 1.0. *Id.* at 723–24. The court, however, cautioned that even if an epidemiological study satisfies the doubling of the risk criteria, other factors must still be considered. *Id.* at 718–19. Specifically, the court noted the Bradford–Hill and Henle–Koch–Evan criteria as "part of sound methodology generally accepted by the current scientific community." *Id.* at 719.

The court further required that the injured person, when using epidemiological studies, prove that he or she was similarly situated to those in the studies. *Id.* at 720. Additionally, if there are other plausible causes of the injury that could be negated, the plaintiff must also offer evidence excluding those causes with reasonable certainty. *Id.* Although Torres consistently states this is not a toxic tort case, but rather a nonsubscribing worker's compensation case, Torres appears to concede that the *Havner* requirements for causation apply.

Here, much like in *Havner*, Torres attempted to prove causation through his experts' testimony, who primarily relied on scientific studies. As such, pursuant to *Havner*, we must first determine whether Torres' experts' testimony is scientifically reliable in establishing that exposure to the chemicals in this case, in general, cause laryngeal cancer. If so, we then inquire on specific causation, i.e., whether there is some evidence that exposure to these same chemicals caused Torres' laryngeal cancer.

### B. Standard of Review

■■■■ Because Dietz alleges that there is no evidence as to causation, we review the reliability of the experts' testimony under a de novo standard of review. *Havner*, 953 S.W.2d at 711; *Texas Mutual Ins. Co. v. Lerma*, 143 S.W.3d 172, 175 (Tex. App.-San Antonio 2004, pet. denied). An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In reviewing whether there is no evidence of probative force to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). However, rather than focus on the expert's conclusions, we focus on the reliability of the principles, research, and methods underlying them. *Havner*, 953 S.W.2d at 713. In this context, if the expert's scientific testimony is unreliable it is no evidence of causation. *Id.*

### C. General Causation

■■■■ General causation exists when a substance is capable of causing a particular injury or condition in the general popula-

---

**2.** "Epidemiological studies examine existing populations to attempt to determine if there is an association between a disease or condition and a factor suspected of causing that disease or condition." *Havner*, 953 S.W.2d at 715.

tion. *Id.* Dr. Nachman Brautbar and Dr. Erik Sloman–Moll testified as experts for Torres. Dr. Sloman, Torres' treating physician, did not testify as to general causation.[3] Dr. Brautbar relied on a medical study referred to as the Colt study in rendering his opinion that Torres' "exposure to insecticides and pesticides and toxic chemicals was a substantial factor in the development of his laryngeal cancer and its complications." In his report, Dr. Brautbar stated that "Table V from this paper clearly shows farmers with an increased risk for developing laryngeal cancer at 1.5 increased risk. Table VII from the study shows the highly significant increased risk for developing cancer of the larynx from exposure to insecticides, herbicides and fungicides." The Colt study, however, does not have a Table V or VII, nor do any of the other tables quantify a relative risk. The study does state that "[f]armworkers had significantly elevated mortality from cancer of the larynx; this association was particularly strong among [white males] in the southeast." Aside from the fact that this statement fails to attribute any correlation to pesticide exposure, "[t]o raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than . . . show a substantially elevated risk. . . ." *Id.* at 720.

But even if we take Dr. Brautbar's testimony as true, the Colt study does not reveal an association of more than a doubling of the risk. In fact, the Colt study concludes that "studies need to be conducted to quantify the risks posed by farmwork and to identify the specific agent responsible for adverse health effects in order to provide effective interventions." Additionally, even accepting Dr. Brautbar's interpretation that the Colt study shows causation "if scientific methodology is followed, a single study would not be viewed as indicating that it is 'more probable than not' that an association exists.'" *Id.* at 728. As a result, this study alone cannot support a finding that exposure to pesticides in general causes laryngeal cancer. The other 23 studies similarly do not quantify a relative risk between exposure to pesticides and any type of cancer.

Despite this statistical deficiency, Dr. Brautbar does not substantiate his opinion based on other scientifically accepted methodology. On appeal, Torres states that Dr. Brautbar used other factors to evaluate causation, specifically the Bradford–Hill criteria.[4] Further, Torres recognizes that courts may resort to what are commonly known as the *Robinson* factors to determine the reliability of an expert's testimony.[5] *See generally E.I. du Pont de*

---

3. Dr. Sloman testified that he was only using his medical knowledge of cancer and the patient's history to conclude that Torres' exposure to chemicals was a significant risk factor for his laryngeal cancer but he could not quantify the risk. He further stated that a toxicologist could offer greater certainty by determining the specifics of the chemicals and the length of exposure.

4. The Bradford–Hill criteria includes: (1) the strength of association; (2) consistency of association; (3) specificity of association; (4) temporality; (5) biological gradient or dose-response relationship; (6) plausibility; (7) coherence; (8) experimental evidence; and (9) analogy. *Havner,* 953 S.W.2d at 718 n. 2.

5. The *Robinson* factors include:

> (1) the extent to which the theory has or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses that have been made of the theory or technique.

*Robinson,* 923 S.W.2d at 556.

*Nemours & Co., v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). Unfortunately, Torres does not explain how either under the Bradford–Hill criteria or the *Robinson* factors Dr. Brautbar's testimony is reliable, nor are we able to arrive at such a conclusion.

Based on this record, we conclude there is no evidence of a scientifically accepted methodology that establishes exposure to pesticides in general causes laryngeal cancer. In the absence of such evidence, Dr. Brautbar's opinion is left without a reliable foundation. Thus, it appears that neither the epidemiological and other medical studies in evidence, the Bradford–Hill criteria, or the *Robinson* factors support the substance of Dr. Brautbar's opinion. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 500 (Tex.1995) (stating to "constitute evidence of causation, an expert opinion must rest in reasonable medical probability"). Without a reliable foundation, Dr. Brautbar's opinion is no evidence of general causation.

### D. Specific Causation

■■■ Likewise, Torres did not produce scientifically reliable evidence of specific causation. To establish specific causation through scientific studies, Torres must not only introduce sufficient evidence of general causation, he must also show that he is similar to those in the studies. *Havner,* 953 S.W.2d at 720; *Missouri Pac. R.R. Co. v. Navarro,* 90 S.W.3d 747, 755 (Tex. App–San Antonio 2002, no pet.). This burden would include "proof that [1] the injured person was exposed to the same substance, [2] that the exposure or dose levels were comparable to or greater than those in the studies, [3] that the exposure occurred before the onset of injury, and [4] that the timing of the onset of injury was consistent with that experienced by those in the study." *Havner,* 953 S.W.2d at 720; *Navarro,* 90 S.W.3d at 755. In addition, if other plausible causes of the injury exist, the plaintiff must also offer evidence excluding those causes with reasonable certainty. *Havner,* 953 S.W.2d at 720; *Navarro,* 90 S.W.3d at 755.

#### 1. *Injured Person was Exposed to the Same Substance*

Importantly, none of the studies identify a specific substance or a group of substances as having a statistically significant association with laryngeal cancer. Moreover, neither Dr. Brautbar nor Dr. Sloman were able to identify, as a carcinogen, any particular chemical or compound within the pesticides, herbicides, fungicides, or insecticides to which Torres was exposed.

#### 2. *Exposure or Dose Levels were Comparable to or Greater than those in the Studies*

Assuming that the scientific studies established general causation and that Torres was exposed to the same substance or group of substances, there is no evidence that Torres' exposure was comparable to or greater than those involved in any of the studies. As to Torres' level of exposure, Dr. Brautbar states "[o]n one occasion, one of the documents described heavy dusty exposure which could be seen on the clothing, therefore, indicative that the exposure levels are substantial. While it cannot be quantified how substantial, they are substantial to the point that they are seen on the clothing and seen on the hair."

Dr. Brautbar's testimony is flawed for at least two reasons. First, Dr. Brautbar's estimate is no evidence of Torres' level of exposure. *See Austin v. Kerr–McGee Refining Corp.,* 25 S.W.3d 280, 293 (Tex. App.-Texarkana 2000, no pet.) ("Guesses, even if educated, are insufficient to prove the level of exposure in a toxic tort case."). Alternatively, there is no evidence in the record that "substantial" exposure is comparable or greater than the exposure level involved in any of the studies.

### 3. Exposure Occurred Before Onset of Injury

Here there is sufficient evidence that Torres was exposed to pesticides before he contracted laryngeal cancer. However, establishing this time period alone is no evidence of specific causation.

### 4. Timing of the Onset of Injury was Consistent with Studies

Because none of the scientific studies support a finding of general causation, the timing of the onset of Torres' laryngeal cancer is immaterial in establishing specific causation.

### 5. Evidence Excluding Other Causes

Torres claims that both Dr. Brautbar and Dr. Sloman used a differential diagnosis to establish specific causation. Torres further claims Dr. Brautbar conducted the same differential diagnosis method in this case as in *Asad v. Continental Airlines* where he successfully testified that Asad suffered carbon monoxide poisoning in the workplace. 314 F.Supp.2d 726 (N.D.Ohio 2004). However, Torres' reliance on the differential diagnosis method and on *Asad* is misplaced.

A reliable differential diagnosis generally requires: (1) compiling all possible causes for the patient's symptoms and (2) eliminating each of these causes until arriving at one that cannot be ruled out or concluding one cause is the most likely among those not excluded. *Asad*, 314 F.Supp.2d at 737; *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 245 (Tex.App.-Houston [14th Dist] 2002, no pet.). A reliable differential diagnosis in this case would, however, first require establishing that exposure to the alleged chemicals causes laryngeal cancer—a requirement that remains unfulfilled.

Further, Dr. Brautbar's testimony in *Asad* illustrates some key distinctions. In *Asad*, Dr. Brautbar conducted a differential diagnosis relying on epidemiological studies that supported his opinion. *Asad*, 314 F.Supp.2d at 737. Dr. Brautbar testified as to specific levels of exposure based on a methodology supported by scientific literature on toxicology. *Id.* Also the scientific literature supported Dr. Brautbar's opinion that carbon monoxide caused Asad's symptoms. *Id.* Based on this evidence and on the differential diagnosis of another expert, Dr. Brautbar then concluded that carbon monoxide exposure was a substantial factor in the cause of Asad's cerebral palsy. Unlike in this case, however, in *Asad* there was some scientifically reliable evidence establishing that exposure to a specific substance at specific levels can cause the injury in question. *Id.* at 741. Consequently, *Asad* is distinguishable and only helps to illustrate the importance of general causation in a reliable differential diagnosis.

As such, there is no evidence that exposure to the chemicals in this case is a possible cause of Torres' laryngeal cancer. Consequently, in the absence of general causation, Dr. Brautbar's and Dr. Sloman's differential diagnosis is no evidence of specific causation.

### CONCLUSION

After reviewing Dietz's contentions, the record testimony, and accompanying exhibits, we conclude that there is no evidence to support the jury's finding that Dietz's negligence proximately caused Torres' laryngeal cancer. Accordingly, we sustain issue one and reverse the trial court's judgment and render judgment that Torres take nothing.