**AMERICAN ZURICH INSURANCE COMPANY, Appellant,**

v.

**Daniel SAMUDIO, Appellee.**

No. 01–08–00233–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 11, 2010.

Rehearing Overruled June 11, 2010.

Gregory D. Solcher, Robert D. Stokes, Flahive, Ogden & Latson, Austin, TX, for Appellant.

Byron C. Keeling, Keeling & Downes, P.C., David Q. Haag II, Michael P. Doyle, Doyle Raizner LLP, Ruth Brett Downes, Keeling & Downes, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK, and Justices ALCALA and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Zurich American Insurance Company (Zurich), a workers' compensation carrier, appeals from the trial court's

judgment awarding attorney's fees to Daniel Samudio, appellee, and dismissing its appeal for lack of subject matter jurisdiction. Zurich had filed a petition for judicial review of a final decision by the Texas Department of Insurance Division of Workers' Compensation (Division) that held Daniel Samudio, appellee, had a 20 percent impairment rating. In three issues, Zurich asserts that (1) the trial court had jurisdiction to determine whether Samudio's impairment rating complied with the Texas Workers' Compensation Act, (2) Samudio's plea to the jurisdiction, taken to its logical extension, would obviate summary judgment practice, and (3) the trial court should not have ordered Zurich to pay Samudio's attorneys' fees. We conclude that (1) the trial court properly dismissed Zurich's judicial review action because it did not have jurisdiction under the Texas Workers Compensation Act to effect the remedies sought by Zurich, (2) a plea to the jurisdiction is a proper procedural vehicle for challenging a trial court's subject matter jurisdiction, and (3) the trial court properly ordered Zurich to pay Samudio's reasonable and necessary attorney's fees because Samudio was the prevailing party in the lawsuit.

We affirm.

### Background

While in the course of his employment, Samudio sustained a compensable injury to his back when he fell off a ladder. Samudio had four surgeries to repair his back, including a laminectomy and a multilevel spinal fusion. Samudio's surgeons did not order preoperative flexion or extension x-rays before surgically operating on his back.

His employer carried worker's compensation insurance coverage through Zurich. After his injury, Samudio filed a workers' compensation claim with the Division, the Texas administrative agency that administers the Texas Workers' Compensation Act.[1] Under the Act, an injured worker may become entitled to receive impairment income benefits, which are based on an impairment rating assigned by a physician.[2] In determining the existence and degree of an injured worker's permanent impairment, the Division is required to use the fourth edition of the *Guides to the Evaluation of Permanent Impairment*, published by the American Medical Association (AMA).[3]

The principal methodology found in the fourth edition of the *Guides* is its injury model, which uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories.[4] Depending on which DRE category the patient falls into, the examining doctor will assign the patient a particular impair-

---

1. Effective September 1, 2005 the legislature abolished the Texas Workers' Compensation Commission (the Commission), and transferred its responsibilities to the Texas Department of Insurance, Division of Workers' Compensation (the Division). Act of May 29, 2005, 79th Leg. R.S., ch. 265 §§ 8.001(b), 8.004(a), 2005 Tex. Sess. Law Serv. 608. Although both the Commission and the Division were in operation during the time relevant to this dispute, for consistency we will refer to the Commission and the Division as the Division only.

2. *See* Tex. Lab.Code Ann. § 408.121 (Vernon 2006); *Tex. Dep't of Ins., Div. Of Workers' Comp. v. Lumbermens Mut. Cas. Co.*, 212 S.W.3d 870, 872 (Tex.App.-Austin 2006, pet. denied).

3. *Id.* § 408.124(b) (Vernon 2006); 28 Tex. Admin. Code § 130.1(c)(2)(B)(I) (West 2009) (The fourth edition of the *Guides* must be used for impairment ratings issued on or after October 15, 2001).

4. *Lumbermens Mut. Cas. Co.*, 212 S.W.3d at 872 (Tex.App.-Austin 2006, pet. denied).

ment rating. In cases where spinal fusion surgery is performed, the *Guides* require the examining doctor to base the rating on pre-operative flexion and extension roentgenograms (x-rays).[5]

Confusion existed in the medical community regarding how to rate claimants who lacked preoperative flexion and extension x-rays. To address this confusion, the Division issued Advisory 2003–10 and Advisory 2003–10B, in 2003 and 2004, respectively. The second advisory added an additional section to the first. The advisories attempted to provide an alternative standard for assessing a DRE category in cases where there are no preoperative x-rays.[6]

The advisories included a controversial provision that stated "[i]f preoperative x-rays were not performed, the rating may be determined using the following criteria: ... b. Multilevel fusion meets the criteria for DRE Category IV, Structural Inclusions, as this multilevel fusion is equivalent to 'multilevel spine segment structural compromise' per DRE IV." In other words, under the Division's Advisories, an examining doctor could include evidence of a spinal fusion surgery in assessing which DRE category the claimant belonged.

The Division appointed Dr. Gason Machado, M.D., to act as a designated doctor for assignment of Samudio's impairment rating. He conducted his examination in 2004. In his "Report of Medical Evaluation" that he distributed to the Division, Dr. Machado stated that used the *Guides* to calculate Samudio's impairment rating as 20 percent based on qualifications found in DRE Category IV. In a later "Letter of Clarification," Dr. Machado clarified that his evaluation was also based upon the Advisories. He stated that he had used the Advisories because the only set of x-rays was a series of lumbar x-rays from 2002 that were inconclusive. As there were no pre-operative flexion or extension x-rays of Samudio, and because Dr. Machado believed the set of x-rays taken of Samudio were inconclusive, in accordance with Advisory 2003–10 and Advisory 2003–10B, the doctor included Samudio's spinal fusion surgery as a factor in his conclusion that Samudio fell within DRE Category IV. Dr. Machado explained:

> TWCC Advisory 2003–10 and Advisory 2003–10b both state that when examining an injured worker who has had spinal surgery, the rating is to be determined by preoperative x-ray tests for motion segment integrity. If those x-rays are not available, the type of surgery can be used to rate the individual. In this case, the pre-operative films do not appear to be motion studies; therefore, I believe I was correct in using the type of surgery to determine the impairment rating.

In November 2005, the Division conducted a benefit contested case hearing (the Hearing) to resolve two issues. The Division ruled in favor of Zurich on the first issue by determining Zurich's contest of the impairment rating was timely. No one challenges that ruling in this case.

The second issue concerned Samudio's "impairment rating." Zurich disputed Dr. Machado's 20 percent impairment rating on the ground that the doctor used the Division's Advisories to help formulate his impairment rating. In support of its position, Zurich offered a letter from John Obermiller, M.D., who criticized Dr. Machado's impairment rating, stating that Dr. Machado's evaluation was "not in accordance with the AMA Guides" and that Dr. Machado was "confusing the declarations

5. *Id.*

6. *Id.* at 873.

of TWCC advisory 2003–10b . . . ." Dr. Obermiller expressly stated in his letter that he was not providing an impairment rating on Samudio, but was instead explaining why, in his opinion, Dr. Machado's opinion was erroneous. This was the only evidence Zurich provided to the Division to contest Dr. Machado's impairment rating. Zurich did not present an alternative impairment rating.

After considering all the evidence including Dr. Obermiller's comments, the Hearing Officer concluded that Samudio's impairment rating was 20 percent based on Dr. Machado's 20 percent impairment rating certification. The Hearing Officer issued a written opinion with his findings and one of those findings specifically determined that there was only one impairment rating.

Zurich appealed the decision at the Hearing to the Division's appeals panel. In February 2006, the Division's appeals panel notified the parties that the Hearing Officer's decision was final.

In March 2005, Zurich appealed the Division's decision to the trial court. In its original petition, Zurich asked the trial court to either hold Samudio had no impairment rating at all, or determine that Samudio's impairment rating was 10 percent rather than 20 percent. It also requested that the trial court abate proceedings until the Austin Court of Appeals issued a final ruling in *Lumbermens Mut. Co.*, regarding the validity of Advisories 2003–10 and 2003–10B. In October 26, 2006, the Austin Court of Appeals held that the advisories were invalid and enjoined their continued use by the Division.[7] Following the Texas Supreme Court's denial of the petition challenging

the *Lumbermens* decision, the Division issued Texas Department of Insurance Commissioners' Bulletin No. B–0033–07 in July 2007, which provides that Advisories 2003–10 and 2003–10B "shall no longer be used in determining impairment ratings."[8]

In August 2007, Samudio filed a plea to the jurisdiction with a request that the trial court dismiss Zurich's lawsuit for lack of subject matter jurisdiction. Samudio contended that Zurich failed to raise a justiciable controversy because the trial court was required to adopt an impairment rating presented to the Division in the underlying proceedings before the agency, and only one rating, the 20 percent rating, had been introduced at the Division level. In October 2007, the trial court granted Samudio's plea to the jurisdiction and dismissed the case.

In February 2008, Samudio filed an additional motion for attorney's fees pursuant to section 408.221 of the Labor Code.[9] Soon afterwards, the trial court rendered a final judgment in Samudio's favor, expressly noting that Samudio was "the prevailing party on all issues" and noting that it would enter a separate order regarding attorney's fees. In March 2008, the trial court awarded Samudio $29,246 in attorney's fees through the date of the final judgment, plus appellate fees of up to $42,000 on the condition that Samudio prevail on appeal. Zurich subsequently appealed to this court.

### The Trial Court's Jurisdiction

In Zurich's first issue, it asserts the trial court erred in granting Samudio's plea to the jurisdiction because the trial court had

---

7. *Id.* at 876–77.

8. *Tex. Dep't of Ins. Commissioners' Bulletin,* No. B–0033–07 (July 18, 2007).

9. *See* Tex. Lab.Code Ann. § 408.221 (Vernon 2006).

subject matter jurisdiction over the lawsuit.

## A. Plea to the Jurisdiction

▉ Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). If the district court lacks the power to effect a remedy that would resolve the dispute at issue, the case does not present a justiciable issue. *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex.App.-Houston [1 Dist.] 2006, pet. denied).

▉ "The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000) (footnotes omitted); *see also Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex.2007) ("A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction."). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. The purpose of a dilatory plea is not to force the plaintiff to preview its case on the merits, but to establish a reason why the merits of the case should not be reached. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554.

▉ A plea to the jurisdiction can challenge either the sufficiency of the plaintiff's pleadings or the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex.2004). When a plea to the jurisdiction attacks the pleadings, the issue turns on whether the pleader has alleged sufficient facts to demonstrate subject matter jurisdiction. *Id.* at 226. In such cases, we construe the pleadings liberally in the plaintiff's favor and look for the pleader's intent. *Id.* When the pleadings neither allege sufficient facts nor demonstrate incurable defects, the plaintiff should usually be afforded an opportunity to amend. *Id.* at 226–27. However, if the pleadings affirmatively negate jurisdiction, then the plea to the jurisdiction may be granted without leave to amend. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, a court may consider evidence in addressing the jurisdictional issues. *Id.* at 227. If the evidence reveals a question of fact on the jurisdictional issue, the trial court cannot grant the plea, and the issue must be resolved by a fact finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

▉ In reviewing a trial court's granting of a plea to the jurisdiction, we do not look to the merits of the plaintiff's case, but consider only the pleadings and the evidence pertinent to the jurisdictional inquiry. *Id.* at 227. The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and the jurisdictional defect is incurable, then the cause is properly dismissed. *See Miranda*, 133 S.W.3d at 227. However, when the plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the

plaintiff should be afforded the opportunity to amend. *Id.* at 226–27.

This standard of review generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Miranda,* 133 S.W.3d at 228. To prevail on a plea to the jurisdiction, the party asserting the plea "must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the court." *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. Whether a court has subject matter jurisdiction over a case is a legal question and, therefore, we review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Miranda,* 133 S.W.3d at 226; *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). A trial court properly dismisses claims over which it has no subject matter jurisdiction. *Thomas v. Long,* 207 S.W.3d 334, 338 (Tex. 2006).

### B. Impairment Ratings

A workers' compensation claimant is eligible to receive impairment income benefits if he continues to have an impairment after reaching maximum medical improvement (MMI). TEX. LAB.CODE. ANN. § 408.121. MMI is defined as the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated" or "the expiration of 104 weeks from the date on which income benefits begin to accrue." *Id.* § 401.011(30)(A), (B) (Vernon Supp. 2009). In order to obtain impairment benefits, an employee must be certified by a doctor as having reached MMI and must be assigned an impairment rating by a certifying doctor, the percentage of which expresses the extent to which the claimant's injury permanently impaired his body. *Id.* §§ 401.011(24) (Vernon Supp. 2009), 408.123(a) (Vernon 2006).

All impairment ratings must be assigned by doctors based on a review of medical records and a certifying physical examination performed explicitly to determine MMI and an impairment rating. *See* TEX. LAB.CODE ANN. § 408.124 (Vernon 2006); 28 TEX. ADMIN. CODE § 130.1(b)(2), (4)(B) (West 2009); *Pac. Employers Ins. Co. v. Brown,* 86 S.W.3d 353, 360 (Tex.App.-Texarkana 2002, no pet.). The statute appears to contemplate that physicians for the claimant and the carrier may each make an impairment determination. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 514 (Tex.1995). If their findings conflict, the claimant must be examined by a "designated doctor" selected by mutual agreement of the parties or by the Division. *Id.* (citing TEX. LAB.CODE. ANN. § 408.125 (Vernon 2006)). The designated doctor's rating is binding on the Division if he or she was selected by the parties, while the rating has presumptive weight if the doctor was selected by the Division. *Id.* In the latter case, the presumption is overcome only if the great weight of the other medical evidence is to the contrary, in which case the Division must adopt the impairment rating of "one of the other doctors." *Id.*

The requirements for assigning an impairment rating include performing a complete medical examination of the employee for the explicit purpose of determining MMI, 28 TEX. ADMIN. CODE § 130.1(b)(4)(B) (West 2009); certifying the employee has reached MMI, 28 TEX. ADMIN. CODE § 130.1(b)(2) (West 2009); identifying, documenting, and analyzing objective clinical or laboratory findings of permanent impairment for the current compensable injury, 28 TEX. ADMIN. CODE § 130.1(c)(3)

(West 2009); comparing the results of the analysis with the impairment criteria and providing the following: a description and explanation of specific clinical findings related to each impairment, including zero percent impairment ratings, a description of how the findings relate to and compare with the criteria described in the AMA *Guides,* and explaining any inability to obtain the required measurements, 28 TEX. ADMIN. CODE § 130.1(c)(3)(D) (West 2009). The doctor assigning the impairment rating shall assign one whole body impairment rating for the current compensable injury. 28 TEX. ADMIN. CODE § 130.1(c)(3)(E) (West 2009).

In addition, in order to certify MMI and assign an impairment rating for the current compensable injury, the certifying doctor is required to complete, sign, and submit the report of medical evaluation and a narrative report to the Division and the parties involved within a certain time frame. *Id.* § 130.1(d). The narrative report must include the date of the certifying examination; the date of MMI; findings of the certifying examination, including both normal and abnormal findings and an explanation of the analysis performed to find whether MMI was reached; a narrative history of the medical condition that outlines the course of the injury and correlates the injury to the medical treatment; the current clinical status; diagnosis and clinical findings of permanent impairment as stated above; and the edition of the AMA *Guides* used in assigning the impairment rating. *Id.*

## C. Disputing Impairment Ratings–Administrative Process

 The Workers' Compensation Act vests the Division with exclusive jurisdiction to determine a claimant's entitlement to medical benefits. *In re Liberty Mut. Fire Ins. Co.,* 295 S.W.3d 327, 328 (Tex.2009). Under the "exclusive jurisdic-

tion doctrine," the legislature grants the Division the sole authority to make the initial determination in a medical benefit dispute. *Subaru of Am. v. David McDavid Nissan,* 84 S.W.3d 212, 221 (Tex.2002). If an agency has exclusive jurisdiction, a claimant must exhaust all administrative remedies in the agency before filing a claim in the trial court. *See In re Entergy Corp.,* 142 S.W.3d 316, 321–22 (Tex.2004); *Subaru,* 84 S.W.3d at 221.

 In instances where the parties dispute the impairment rating, the Texas Workers' Compensation Act provides a three-step administrative process for resolving disputed issues. *See* TEX. LAB. CODE ANN. §§ 410.021–.209 (Vernon 2006 & Vernon Supp. 2009) (first tier: benefit review conference; second tier: contested case hearing; third tier: review by administrative appeals panel); *Tex. Dept. of Ins., Div. of Workers' Comp. v. Jackson,* 225 S.W.3d 734, 736 (Tex.App.-Eastland 2007, no pet). Compliance with each step is a prerequisite to participation in the next level, and subsequent proceedings are limited by the scope of the prior proceeding. *Jackson,* 225 S.W.3d at 736.

The Division's first tier, the benefit review conference, is an informal dispute resolution proceeding. TEX. LAB.CODE ANN. § 410.021. If the conference is unsuccessful, the parties proceed to a contested case hearing administered by a hearing officer. *See id.* §§ 410.151–.169. The hearing officer is the only individual with the authority to excuse exhaustion of administrative remedies upon a showing of good cause. *Jackson,* 225 S.W.3d at 736. A party dissatisfied with the hearing officer's decision can appeal to the Division's appeals panel, which is the third and final tier in the administrative process. *See* TEX. LAB.CODE ANN. § 410.202 (Vernon 2006); *see id.* at 737 (noting legislature has made clear that it intended for hearing officer to make

initial decision in workers' compensation dispute and that all subsequent proceedings are limited to review of that decision). The request for appeal and the opposing party's response must clearly and concisely rebut or support the decision of the hearing officer on each issue on which review is sought. TEX. LAB.CODE ANN. § 410.202(c). The Division appeal is not a de novo trial, but rather is limited to a review of the record from the contested case hearing. *See id.* § 410.203(a). After considering briefs and the record from the contested case hearing, the Division's appeals panel may affirm the decision of the hearing officer, reverse and render a new decision, or remand no more than one time to the hearing officer for further consideration and development of the record. *Id.* § 410.203(6)(c); *Garcia,* 893 S.W.2d at 515. The Texas Workers' Compensation Act provides that the Division must adopt the impairment rating of one of the doctors, giving the designated doctor's rating presumptive weight. TEX. LAB.CODE ANN. § 408.125(c) (Vernon 2006); *Brown,* 86 S.W.3d at 359.

**D. Trial Court's Jurisdiction under Texas Workers' Compensation Act**

▆▆▆▆ An agency's enabling legislation determines the procedures for obtaining review of agency decision. *Harris County Emergency Servs. Dist. # 1 v. Miller,* 122 S.W.3d 218, 222 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Tex. Natural Res. Conservation Comm'n v. Sierra Club,* 70 S.W.3d 809, 811 (Tex. 2002)). Parties have no absolute right to challenge an administrative order; the right of judicial review arise only when (1) a statute creates it, (2) the order adversely affects a vested property right, or (3) the order otherwise violates a constitutional right. *Id.*

The legislature, through the Texas Workers' Compensation Act, requires a modified trial de novo procedure for judicial review of Division actions involving "eligibility for ... income ... benefits." TEX. LAB.CODE ANN. § 410.301(a); *Rodriguez v. Serv. Lloyds Ins. Co.,* 997 S.W.2d 248, 256 (Tex.1999); *Garcia,* 893 S.W.2d at 528–30. Modified de novo review means: (1) the trial court is informed of the Division Appeals Panel's decision; (2) evidence of the extent of impairment is limited to that presented to the Division, unless the court makes a threshold finding that the claimant's condition has substantially changed; and (3) the court is required to adopt the specific impairment rating arrived at by one of the physicians in the case. TEX. LAB.CODE ANN. §§ 410.304, 410.306–.307 (Vernon 2006); *Garcia,* 893 S.W.2d at 528. Here, because no one claims Samudio's condition has changed, evidence under the second prong would be limited to that presented to the division. *See id.*

In a judicial review case, the Texas Workers' Compensation Act requires that the trial court adopt one of the impairment ratings assigned by the doctors in the case. TEX. LAB.CODE ANN. §§ 401.011(15) (Vernon Supp. 2009), 408.125(c), 410.306(c); *Garcia,* 893 S.W.2d at 528 (trier of fact must adopt specific rating of one of physicians in case); *Bell v. Zurich Am. Ins. Co.,* 311 S.W.3d 507, 511 (Tex.App.-Dallas 2009, no pet.) ("In a judicial review case, the court or jury must adopt the specific impairment rating of one of the physicians in the underlying administrative case."); *Brown,* 86 S.W.3d at 360. The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303 (Vernon 2006); *Brown,* 86 S.W.3d at 359. Only issues presented and preserved through the Division dispute process under Chapter 410 of the Texas Labor Code may be presented

at trial. *See* TEX. LAB.CODE ANN. § 410.302(b) (Vernon 2006).

### E. No Jurisdiction to Effect Remedies Sought

In its first issue, Zurich asserts the trial court had jurisdiction to determine whether Samudio's impairment rating complied with the Texas Workers' Compensation Act. The only issue disputed between the parties to be resolved by the trial court through judicial review was the extent of impairment suffered by Samudio. A dispute regarding the extent of impairment suffered by Samudio goes directly to the issue of Samudio's eligibility for income benefits. The trial court or jury, therefore, must review the Division's decision regarding Samudio's impairment rating under a modified de novo review, and only has jurisdiction to adopt an impairment rating assigned by a doctor in the underlying administrative case. *See* TEX. LAB. CODE ANN. §§ 410.301(a), 410.306(c); *Rodriguez,* 997 S.W.2d at 256; *Garcia,* 893 S.W.2d at 528; *Bell,* 311 S.W.3d at 511; *Brown,* 86 S.W.3d at 360. The requirement that the impairment rating match a physician's findings is part of the substantive statutory scheme. *Garcia,* 893 S.W.2d at 528 ("Because the ultimate impairment rating must match one of the doctor's findings, the disputed question of fact on appeal can only be which doctors' rating should prevail."); *Fin. Ins. Co. v. Ragsdale,* 166 S.W.3d 922, 928 (Tex.App.-El Paso 2005, no pet.) ("It is clear from the facts presented to us that the only issue under dispute between the parties and to be resolved by the jury was the extent of impairment suffered by Appellee. The jury was required to adopt the specific rating of one of the physicians in the case."); *Bell,* 311 S.W.3d at 511 ("In other words, the requirement that the impairment rating match one of the physicians'

findings is part of the substantive statutory scheme.").

In its original petition, Zurich asked that the court either adopt the 10 percent rating based upon Dr. Obermiller's report, or adopt a zero percent rating by holding Dr. Machado's rating "be set aside and held for not [sic]." On appeal, Zurich suggests as a remedy that the court could also use an expert witness, or Dr. Machado himself, to help the fact finder calculate an entirely new impairment rating. The trial court does not have the jurisdiction to effect any of these remedies.

■ First, the trial court does not have the jurisdiction to select the 10 percent rating suggested by Dr. Obermiller in his report. Dr. Obermiller's letter does not meet the requirements that an impairment rating be assigned by doctors based on a review of medical records, a certifying physical examination, and be performed explicitly to determine MMI and an impairment rating. *See* TEX. LAB.CODE. ANN. § 408.124; 28 TEX. ADMIN CODE § 130.1(b)(4); *Brown,* 86 S.W.3d at 360 (where doctor only intended to express concern regarding doctors' ratings and did not intend to assign rating himself, no evidence that doctor met requirements for assigning claimant impairment rating). Perhaps more importantly than the fact that Dr. Obermiller's opinion did not comply with the code, it is undisputed that Dr. Obermiller was not attempting to provide evidence of Samudio's impairment rating. Dr. Obermiller wrote:

> I am not providing an impairment rating on this individual. This review has been conducted to determine, in my opinion that the process set forth in the [*Guides*] was followed. I have not seen or examined this claimant. I have relied solely on information provided by [Zurich] in presenting my opinion.

Dr. Obermiller's letter specifically stated that he was "not providing an impairment rating," that he had "not seen or examined [Samudio]," and that he had "relied solely on information provided by [Zurich]." Dr. Obermiller himself characterized his role as impeachment evidence only in that he was determining whether Dr. Machado followed the proper process set forth in the *Guides.*

In contrast, it is undisputed that Dr. Machado was providing an impairment rating under the Division's then existing requirements. When the 2005 contested case hearing took place between Samudio and Zurich, the Austin Court of Appeals had not yet issued its decision in *Lumbermens,* and Advisories 2003–10 and 2003–10b were still in effect. *Lumbermens* was not decided, and the Bulletin was not released, until after Zurich exhausted its administrative remedies in the Division. Until it released *Bulletin* No. B–0033–07, the Division required certifying physicians to consider the effect of the Advisories in calculating an impairment rating for a claimant who had undergone a multilevel spinal fusion. *See, e.g.,* Div. Workers' Comp., Appeal No. 061940, 2006 WL 3187285, *2 (Oct. 25, 2006) (examining doctor was "forced to adhere to Advisory 2003–10"); Div. Workers' Comp., Appeal No. 061713–s, 2006 WL 3064080, *5 (Oct. 20, 2006) (noting that "the Division Advisories must be considered as part of the certifying doctor's process in determining the appropriate [impairment rating]"); Tex. Workers' Comp. Comm'n, Appeal No. 051587, 2005 WL 2507672, *1 (Aug. 22, 2005) (noting the Division "advisories must be considered as part of the certifying doctor's process in determining the appropriate [impairment rating]").

■ Unlike Dr. Obermiller, Dr. Machado was appointed as the designated doctor to provide an impairment rating;

he examined Samudio; he examined Samudio's medical records; and he did provide an impairment rating for Samudio, albeit one that was later determined by the *Lumbermens* decision to lack conformity with the *Guides. See Lumbermens,* 212 S.W.3d at 876–77. As Dr. Obermiller's opinion undisputedly was impeachment evidence only and did not constitute an impairment rating, the only impairment rating presented to the Division was Dr. Machado's 20 percent rating. As Dr. Machado's impairment rating was the only rating in evidence before the Division, evidence of Samudio's impairment rating was limited to Dr. Machado's impairment rating on judicial review and the trial court could adopt only Dr. Machado's rating. *See* TEX. LAB.CODE ANN. § 410.306(c) (evidence of extent of impairment rating limited to that presented to Division); *see also Garcia,* 893 S.W.2d at 528 (fact finder may not find impairment rating other than one of percentages in evidence before Division); *Ausaf v. Highlands Ins. Co.,* 2 S.W.3d 363, 367 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (amended certification of maximum medical improvement inadmissible in district court because it was not first presented to Division).

■ Second, the trial court does not have the jurisdiction to craft a new impairment rating, based upon an expert's testimony, or testimony by Dr. Machado. The impairment rating imposed by the trial court must be one of the percentages in evidence before the Division, unless the trial court makes a threshold finding that the claimant's condition has substantially changed, or there was a clerical error made in the determination of the impairment rating. *See* TEX. LAB.CODE. ANN. §§ 410.306(c), 410.307(a); *Garcia,* 893 S.W.2d at 528 (holding fact finder or trial court may not craft its own impairment rating; noting that jury, presented with

assigned ratings of 10, 14, and 20, would have to return one of those numbers, not 16 percent as crafted by the jury); *see also, e.g., Old Republic Ins. Co. v. Rodriguez,* 966 S.W.2d 208 (Tex.App.-El Paso 1998, no pet.) (finding that example provided in *Garcia* addressed compromise verdicts and was not intended to prohibit fact finder from accepting doctor's findings with correction for minor clerical error for which evidence was presented). Because none of the parties here contend that Samudio's condition changed or that Dr. Machado made a clerical error, the trial court did not have the jurisdiction to allow the fact finder to craft a new impairment rating, nor did it have the jurisdiction to remand it to the Division. *See Bell,* 311 S.W.3d at 511 (labor code does not permit reconsideration or reopening of evidence of claimant's impairment rating); *Tex. Workers' Comp. Comm'n v. Harris County,* 132 S.W.3d 139, 146 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("Although we can understand why it might seem appropriate to remand the issue of appellant's impairment rating to the appeals panel, no mechanism in the labor code allows for such a remand."); *Tex. Workers' Comp. Comm'n v. Tex. Mut. Ins. Co.,* 119 S.W.3d 886, 887 (Tex.App.-Dallas 2003, no pet.) ("[N]othing in the labor code allows the trial court to send matters back to the appeals panel.").

■ Finally, the trial court does not have the jurisdiction to "set aside" Dr. Machado's impairment rating and find Samudio is entitled to no benefits by giving him a zero percent rating. It only has the jurisdiction to allow a fact finder to choose either.Dr. Machado's rating, or an alternative rating that was presented to the Division. *See* Tex. Lab.Code Ann. §§ 410.301(a), 410.306(c); *Garcia,* 893 S.W.2d at 528; *Bell,* 311 S.W.3d at 511; *Brown,* 86 S.W.3d at 360.

Although *Lumbermens* held the Advisories were invalid, the decision does not affect our jurisdictional analysis here, but instead would become pertinent on the merits if the trial court had two or more ratings from which to choose. *See Lamar Univ. v. Doe,* 971 S.W.2d 191, 195 (Tex. App.-Beaumont 1998, no pet.) ("When confronted with a plea to the jurisdiction which contends that the trial court is without power to proceed on the subject matter in question, the question of whether a genuine issue of material fact exists as to the merits of plaintiff's lawsuit is immaterial. The merits of plaintiffs' suit only become ripe for consideration *after* the trial court determines subject matter jurisdiction.") (emphasis in original); *see also Bell,* 311 S.W.3d at 509 (holding trial court that had two alternative ratings from which to choose properly reversed Division's impairment rating because Division's rating was decided using Advisories, as compared to alternative impairment rating that did not use the Advisories as guidance).

■ By requesting a zero rating, Zurich's pleadings ask the trial court to craft or select an impairment rating not in evidence before the Division, which it cannot do. *See* Tex. Lab.Code Ann. §§ 410.301(a), 410.306(c); *Garcia,* 893 S.W.2d at 528; *Bell,* 311 S.W.3d at 511; *Brown,* 86 S.W.3d at 360. Because the trial court does not have jurisdiction to effect any of the remedies sought by Zurich, we hold that the trial court properly granted Samudio's plea to the jurisdiction.

We overrule Zurich's first issue.

### Plea to the Jurisdiction as a Procedural Mechanism

In its second issue, Zurich contends "[Samudio's] argument, taken to its logical extension, would obviate summary judgment practice." It asserts that in instanc-

es where the "court can reach only one result in a case, the case is ripe for summary judgment." Having held the trial court properly resolved the dispute as a plea to the jurisdiction, we overrule Zurich's second issue.

### Attorney's Fees

In its third issue, Zurich contends the trial court erred in ordering it to pay Samudio's attorney's fees. Zurich asserts that Samudio "is not entitled to recover attorney's fees in this case because he has not proved that he is a prevailing party under the act."

The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Therefore, we review this issue de novo. *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999). A trial court's dismissal for lack of subject matter jurisdiction does not prevent the concurrent award of attorney's fees under a mandatory award provision. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 257 (Tex.App.-Dallas 2005, no pet.).

Zurich's lawsuit is the appeal of a decision by an appeals panel of the Division, which is authorized by Chapter 410, Subchapter G of the Texas Labor Code. TEX. LAB.CODE. ANN. §§ 410.301–.308 (Vernon 2006). The Texas Workers' Compensation Act provides that in a suit for "judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability ... or the amount of, income ... benefits," an insurance carrier "is liable for reasonable and necessary attorney's fees ... as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier...." *Id.* § 408.221(c) (Vernon 2006). Otherwise, the claimant's attorney's fees

are to be paid from the claimant's recovery. *Id.* § 408.221(b) (Vernon 2006). In either circumstance, "[a]n attorney's fee ... for representing a claimant before the ... court under this subtitle must be approved by the ... court." *Id.* § 408.221(a).

The Texas Workers' Compensation Act does not define "prevailing party." *See* TEX. LAB.CODE. ANN. §§ 401.001–506.002 (Vernon 2006). Cases construing "prevailing party" under Civil Practice and Remedies Code chapter 38 and under Texas Rule of Civil Procedure 131 have consistently applied the same definition and analysis to the phrase. A prevailing party is one who is vindicated by the trial court's judgment. *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 564–65 (Tex. App.-Texarkana 2003, pet. denied) (construing Chapter 38); *Scholl v. Home Owners Warranty Corp.*, 810 S.W.2d 464, 468–69 (Tex.App.-San Antonio 1991, no writ) (construing Rule 131); *see also Hagberg v. City of Pasadena*, 224 S.W.3d 477, 484–85 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (claimant is prevailing party entitled to attorney's fees where claimant began with final Division decision in his favor and after lawsuit is filed, parties are put back in same position as before carrier filed judicial review).

Section 408.147(c) requires that the claimant prevail "on any disputed issue," and § 408.221(c) requires that the claimant "prevail on an issue on which judicial review is sought by the insurance carrier." *See* TEX. LAB.CODE ANN. §§ 408.147(c), 408.221(c) (Vernon 2006). Here, Samudio sought and obtained dismissal of Zurich's claim. When the trial court granted Samudio's plea to the jurisdiction, Zurich's claim was disposed of and Samudio was in the same position he would be in if he had prevailed after a trial on the matter. The dismissal of Zurich's claim made Samudio

a prevailing party for the purposes of §§ 408.147 and 408.221. *See Ins. Co. of State of Pa. v. Orosco,* 170 S.W.3d 129, 134 (Tex.App.-San Antonio 2005, no pet.) (holding that claimant who sought and obtained dismissal of carrier's judicial review challenge of Division decision through plea to jurisdiction, was prevailing party for purposes of § 408.147); *see also Weng Enter., Inc. v. Embassy World Travel, Inc.,* 837 S.W.2d 217, 222–23 (Tex.App.-Houston [1st Dist.] 1992, no writ) (term "prevailing party" refers to party who successfully prosecutes action or successfully defends against action on main issue). We hold the trial court properly awarded attorney's fees to Samudio, the prevailing party in this appeal from the Division's decision.

We overrule Zurich's third issue.

## Conclusion

We affirm the judgment of the trial court.