Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-09-00541-CV

**STATE OFFICE OF RISK MANAGEMENT**,
Appellant

v.

Ruben C. **RAMIREZ**,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 07-11-00113-CVL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  June 30, 2010

REVERSED AND RENDERED

At issue in this workers' compensation appeal is whether a report of medical evaluation

was unreliable. We hold that the report was unreliable.

### BACKGROUND

On March 10, 1998, Ruben Ramirez sustained a compensable injury to his lumbar spine,

consisting of mild bulging of the L4-L5 disc and a herniated nucleus pulposus at L5-S1. On

September 17, 1998, his treating physician, Dr. Michael Earle performed an L5-S1 laminectomy

and discectomy. On April 5, 1999, Dr. Earle certified Ramirez had reached clinical MMI[1] with a permanent impairment rating of 8%. Ramirez then returned to work as a prison guard with the Texas Department of Criminal Justice. On September 15, 2004, Ramirez returned to Dr. Earle and complained of pain in his back. On November 23, 2005, Dr. Earle stated in his narrative report that the non-operated L4-L5 disc had "now progressed to the point where it is causing the source of his chronic symptomatology." In December 2005, Dr. Earle performed another laminecotomy and discectomy, this time on Ramirez's L4-L5 disc.

On November 22, 2006, Ramirez requested that the Texas Department of Insurance – Division of Workers' Compensation ("the Division") appoint a designated doctor to revisit the issues of maximum medical improvement and impairment rating with respect to his 1998 compensable lumbar injury. The Division assigned Dr. William W. Smith to be the designated doctor. On January 8, 2007, Dr. Smith examined Ramirez and issued a report of medical evaluation, stating that Ramirez had reached statutory MMI on June 27, 2000, and had an impairment rating of 22%.

The workers' compensation carrier, State Office of Risk Management ("SORM"), objected to Dr. Smith's report, arguing that Dr. Smith violated Rule 130.1(c)(3) of the Texas Administrative Code, which requires an "impairment rating for a current compensable injury" to be "based on the injured employee's condition as of the MMI date considering the medical record and certifying examination." SORM explained that the "certifying examination took place six and a half years after the date of statutory MMI" and that "[t]here is no evidence of any

---

[1] "MMI" or "Maximum medical improvement" means "the earlier of: (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated," also called clinical MMI; "(B) the expiration of 104 weeks from the date on which income benefits begin to accrue," also called statutory MMI; or "(C) the date determined by Section 408.104." TEX. LABOR CODE ANN. § 401.011(30) (Vernon Supp. 2009). Section 408.104 deals with MMI after a spinal surgery and allows the commissioner to extend the 104-week period if the employee has had spinal surgery, or has been approved for spinal surgery, within twelve weeks before the expiration of the 104-week period. *See id.* § 408.104(a) (Vernon 2006).

change in the claimant's medical condition between his rating on April 9, 1999, and the statutory date of June 2[7], 2000, a time during which the claimant sought no medical treatment." *Id.* SORM argued that "Dr. Smith's rating rates the claim for [the claimant's] condition on January 8, 2007, and not the statutory date of June 27, 2000, or the assigned date of April 5, 1999." *Id.* SORM further argued that Ramirez "had a second surgery to his back on December 16, 2005, over five years after the statutory date of MMI," and that "this surgery and the effects thereof, including any loss of range of motion, should not have been considered and should have been specifically eliminated in the rating."

Based on SORM's objections, the Division, by letter, asked Dr. Smith to clarify his report. On February 26, 2007, Dr. Smith wrote a clarification letter, confirming that his impairment rating was correct. *Id.*

At the administrative level, the Division's Hearing Officer accepted Dr. Smith's opinion and determined that Ramirez's date of MMI was June 27, 2000, and that Ramirez's impairment rating was 22%. The Division's Appeals Panel concluded that the Hearing Officer's decision should become the final decision of the Appeals Panel. SORM appealed this decision to district court.

Immediately before trial began, SORM objected to the admission of Dr. Smith's report in evidence, explaining in detail why it believed Dr. Smith's report was unreliable. The trial court overruled the objection. When Ramirez moved to admit Dr. Smith's report in evidence during trial, SORM again objected and informed the trial court it was doing so for the same reasons as stated previously. The trial court then admitted Dr. Smith's report "[s]ubject to the – the

objections having previously been heard and ruled on."[2] The jury found in favor of Ramirez. It found that Ramirez's date of MMI was June 27, 2000, and that his impairment rating on that date was 22%. SORM now appeals.

## DISCUSSION

*A.*      *Impairment Ratings*

A workers' compensation claimant is eligible to receive impairment income benefits if he continues to have an impairment after reaching MMI. *See* TEX. LAB. CODE ANN. § 408.121 (Vernon 2006). In order to obtain impairment benefits, an employee must be certified by a doctor as having reached MMI and must be assigned an impairment rating by a certifying doctor, the percentage of which expresses the extent to which the claimant's injury permanently impaired his body. *Id.* § 401.011(24) (Vernon Supp. 2009), § 408.123(a) (Vernon 2006).

All impairment ratings must be assigned by doctors based on a review of medical records and a certifying physical examination performed explicitly to determine MMI and an impairment rating. *See* TEX. LAB. CODE ANN. § 408.124 (Vernon 2006); 28 TEX. ADMIN. CODE § 130.1(b)(2), (b)(4)(B). At the administrative level, if the Division selects a designated doctor to determine the impairment rating, the designated doctor's rating has presumptive weight and can be overcome only if the great weight of other medical evidence is to the contrary, in which case

---

[2] On appeal, Ramirez argues that SORM waived its appellate issue because it did not specifically object at trial to Dr. Smith's report being admitted in evidence, but instead gave a general objection. Texas Rule of Appellate Procedure 33.1 states that "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, *unless the specific grounds were apparent from the context.*" TEX. R. APP. P. 33.1 (emphasis added). Here, the record reflects that the trial court was aware of SORM's previous objections. Therefore, SORM's specific grounds for its objection at trial were apparent from the context, and SORM did not fail to preserve error for appeal.

the Division must adopt the impairment rating of "one of the other doctors." TEX. LAB. CODE ANN. § 408.125 (Vernon 2006).

In assigning an impairment rating, a doctor must perform a complete medical examination of the employee for the explicit purpose of determining MMI, 28 TEX. ADMIN. CODE § 130.1(b)(4)(B); certify that the employee has reached MMI, *id.* § 130.1(b)(2); identify, document, and analyze objective clinical or laboratory findings of permanent impairment for the current compensable injury, *id.* § 130.1(c)(3)(A)-(C); and compare the results of the analysis with the impairment criteria by providing the following: a description and explanation of specific clinical findings related to each impairment, including zero percent impairment ratings, and a description of how the findings relate to and compare with the criteria described in the AMA's *Guides*, explaining any inability to obtain the required measurements, *id.* § 130.1(c)(3)(D). The doctor assigning the impairment rating shall assign one whole body impairment rating for the current compensable injury. *Id.* § 130.1(c)(3)(E).

In addition, in order to certify MMI and assign an impairment rating for the current compensable injury, the certifying doctor must complete, sign, and submit a report of medical evaluation and a narrative report to the Division and the parties involved within a certain time frame. *Id.* § 130.1(d). The narrative report must include the date of the certifying examination; the date of MMI; findings of the certifying examination, including both normal and abnormal findings and an explanation of the analysis performed to find whether MMI was reached; a narrative history of the medical condition that outlines the course of the injury and correlates the injury to the medical treatment; the current clinical status; diagnosis and clinical findings of permanent impairment as stated above; and the edition of the AMA *Guides* used in assigning the impairment rating. *Id.*

In this case, although Dr. Earle had previously certified that Ramirez had reached clinical MMI on April 5, 1999, with an impairment rating of 8%, the Division adopted the later report by Dr. Smith, which assigned a statutory MMI date of June 27, 2000, with an impairment rating of 22%. SORM then appealed to the district court.

B.      *Modified De Novo Review of Division's Decision by District Court*

The Division's decision on issues involving compensability of the injury and eligibility for and the amount of income and death benefits is reviewed by the district court under a modified de novo review. *See* TEX. LAB. CODE ANN. §§ 410.301-.308 (Vernon 2006); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995). Under a modified de novo review, the party appealing the Division's decision on an issue bears the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303 (Vernon 2006); *Am. Zurich Ins. Co. v. Samudio*, No. 01-08-00233-CV, 2010 WL 457482, at *8 (Tex. App.—Houston [1st Dist.] Feb. 11, 2010, no pet. h.).

Further, modified de novo review means that (1) the trier of fact is informed of the Division Appeals Panel's decision, *see* TEX. LAB. CODE ANN. § 410.304 (Vernon 2006); (2) evidence of the extent of impairment is limited to that presented to the Division, unless the court makes a threshold finding that the claimant's condition has substantially changed,[3] *see id.* §§ 410.306(c), 410.307; and (3) the trier of fact must adopt the specific impairment rating of one of the physicians in the case, *see id.* § 410.306(c); *Samudio*, 2010 WL 457482, at *8; *Bell v. Zurich Am. Ins. Co.*, No. 05-09-00284-CV, 2009 WL 3353638, at *4 (Tex. App.—Dallas 2009, no pet.), *reh'g denied*, 2010 WL 703178. Therefore, the trier of fact has jurisdiction only to adopt an impairment rating assigned by a doctor in the underlying administrative case. *See*

---

[3] Substantial change was not an issue in this case; thus, evidence of Ramirez's extent of impairment was limited to evidence that had been presented to the Division.

*Samudio*, 2010 WL 457482, at *8; *Bell*, 2009 WL 3353638, at *4. The requirement that the impairment rating match a physician's finding is part of the substantive statutory scheme. *Samudio*, 2010 WL 457482, at *8; *Bell*, 2009 WL 3353638, at *4. Thus, unless an exception applies, a trial court has no jurisdiction to allow the trier of fact to craft a new impairment rating based on expert testimony presented at trial. *Samudio*, 2010 WL 457482, at *10. Nor can a trial court remand the case to the Division. *Id.*; *see Bell*, 2009 WL 3353638, at *4 ("To the extent that the trial court's judgment contemplates this matter being reconsidered by the Division, the labor code does not permit such reconsideration or the Division's reopening of evidence of [the claimant]'s impairment rating."); *Tex. Workers' Comp. Comm'n v. Harris County*, 132 S.W.3d 139, 146 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Although we can understand why it might seem appropriate to remand the issue of [appellant's] impairment rating to the appeals panel . . ., no mechanism in the labor code allows for such a remand."); *Tex. Workers' Comp. Comm'n v. Tex. Mut. Ins. Co.*, 119 S.W.3d 886, 887 (Tex. App.—Dallas 2003, no pet.) ("[N]othing in the labor code allows the trial court to send matters back to the appeals panel. Further, no mechanism exists in the code for addressing matters remanded from the trial court, and there are no applicable time deadlines that would ensure the appeals panel's timely determination of those matters.").

Finally, the trial court has no jurisdiction to "set aside" an impairment rating given by a doctor or to find that the claimant is entitled to no benefits by giving him a zero percent rating. *Samudio*, 2010 WL 457482, at *10. The trial court has jurisdiction only to allow a fact finder to choose one of the impairment ratings assigned by one of the doctors in the administrative case. *See* TEX. LAB. CODE ANN. §§ 410.301, 410.306(c) (Vernon 2006); *Samudio*, 2010 WL 457482,

at *10. In this case, the jury chose the impairment rating and statutory MMI date assigned by Dr. Smith.

*C.      Dr. Smith's Report*

On appeal, SORM argues that Dr. Smith's report was unreliable and should not have been considered by the jury. And, because the jury should not have considered Dr. Smith's report, it would have had no choice but to accept Dr. Earle's clinical MMI date and impairment rating.

The certification of MMI and assignment of an impairment rating are expert medical opinions. *See* TEX. LAB. CODE ANN. § 401.011(30) (Vernon Supp. 2009) (requiring that MMI be based on reasonable medical probability); 28 TEX. ADMIN. CODE § 130.1(c)(3)(C) (requiring doctor assigning an impairment rating to analyze specific laboratory or clinical findings of impairment). Under Texas Rule of Evidence 702, the proponent of expert testimony bears the burden to demonstrate the expert is qualified, which includes showing that the expert's opinion is both relevant and reliable. TEX. R. EVID. 702; *Tex. Mut. Ins. Co. v. Lerma*, 143 S.W.3d 172, 175 (Tex. App.—San Antonio 2004, pet. denied).

In this case, SORM does not challenge Dr. Smith's qualifications; it challenges only the reliability of Dr. Smith's opinion. SORM emphasizes that Dr. Smith's report relies on range of motion measurements taken more than six years after his designated statutory MMI date, and that such measurements cannot reflect Ramirez's condition as of Dr. Smith's designated statutory MMI date as required by Subsection 130.1(c)(3) of the Texas Administrative Code.

Subsection 130.1(c)(3) requires that assignment of an impairment rating for the compensable injury "be based on the injured employee's condition *as of the MMI date considering the medical record and the certifying examination*." 28 TEX. ADMIN. CODE

§ 130.1(c)(3) (emphasis added). Thus, any effects of Ramirez's second surgery, which occurred after Dr. Smith's designated statutory MMI date, cannot be considered in determining Ramirez's impairment rating.

Dr. Smith's report of January 16, 2007, concluded that Ramirez reached statutory MMI on June 27, 2000, and had an impairment rating of 22%. Dr. Smith's report stated that he had reviewed the following medical records in formulating his opinion:

> Diagnostic Imaging: 07-07-98, an MRI of the lumbar spine was reported to show mild bulging of the L4-5 disc bulge and a small mild to moderate right paracentral herniated nucleus pulposus at L5-S1. Robert Thompson, MD, radiologist.
>
> Surgery: 3-17-98, L5-S1 laminectomy and discectomy. Postoperative diagnosis, right L5-S1 herniated nucleus pulposus. Michael Earle, MD, surgeon.
>
> Other: The following occurred after 6-27-2000 the statutory date of maximum medical improvement.
>
> 09-25-04, an MRI of the lumbar spine without and with contrast was reported to show degenerative disc disease at L4-5 and L5-S1 with a small posterior central disc protrusion at each level, but no severe spinal canal stenosis. Paul Nevitt, MD, radiologist.
>
> 10-27-04, lumbar epidural steroid injection. Michael Earle, MD.
>
> 9-26-05, a CT myelogram was reported to show a Grade 1 spondylolisthesis with bilateral spondylolysis. There was no significant spinal canal or neural foraminal stenosis. Paul Nevitt, MD, radiologist.
>
> 11-09-05, a post discogram CT scan of the lumbar spine was reported to show a posterior annular disruption at L4-5. No definitive CT abnormality was visualized at the L3-4 interspace. Fred Farrell, MD, radiologist.
>
> 12-16-05, bilateral L4-5 laminectomy and discetomy. Postoperative diagnosis L4-5 herniated nucleus pulposus. Michael Earle, MD, surgeon.
>
> 03-28-06, a CT scan of the lumbar spine was reported to show degenerative change of the L4-5 and L5-S1 level with post-surgical changes of the L5-S1 level. There was no significant involvement of the central canal. Mild impingement on the neural foramina was seen at both levels with spondylolysis of the pedicles of L5 noted. Amy Benson, MD, radiologist.

Not listed above is Dr. Earle's original report, which determined that Ramirez reached clinical MMI on April 5, 1999, with an 8% impairment rating.

Dr. Smith's report then explained how he calculated Ramirez's impairment rating:

The medical records received *gave no indication of Mr. Ramirez's condition on June 27, 2000. The impairment rating is calculated solely on this designated doctor's certifying examination.*

Range of motion: Refer to the attached worksheet. The tightest straight leg raise was 38°. The hip flexion/extension was 38°. The ranges of motion of lumbar flexion/extension are valid. The impairment rating based on loss of range of motion is 14°.

Table 49, specific disorders: The medical records received do not indicate any pain or rigidity from the day of surgery, 3-17-98, to the day of statutory MMI, 6-27-2000. Section 2D applies with an 8% impairment.

The whole person impairment rating estimate for this injury is 21%,[4] the combination of 14% with 8%, combined values chart page 246.

*No condition that occurred after the statutory date of MMI was considered in the calculation of the impairment rating.*

This impairment rating estimate should be considered permanent, and is not expected to vary more than 3% during the next year.

(emphasis added). Thus, Dr. Smith's report contradicts itself. While Dr. Smith stated in his report that he had not considered any condition that occurred after the statutory date of MMI, he also stated that he calculated the impairment rating solely on his certifying examination of January 8, 2007, and that the medical records he received gave no indication of Ramirez's condition on the statutory date of MMI.

After SORM pointed out these inconsistencies, the Division asked Dr. Smith to clarify whether he considered any condition occurring after the statutory date of MMI in his calculation of Ramirez's impairment rating. Dr. Smith responded with the following in his clarification letter:

---

[4] This is clearly a mathematical error. The rating should be 22%.

An impairment rating is based on permanent conditions. If the decrease in the ranges of motion of the lumbar spine is due to the compensable injury, then they are permanent conditions. Permanent conditions do not change. *In all medical probability the ranges of motion were decreased before the finding of statutory MMI. I received no range of motion measurement that the ranges of motion on or before statutory [MMI] were greater than I found.*

SORM noted that an impairment rating of 8% from April 5, 1999, was correct.

The specific disorder table lists an 8% impairment rating for Table 49, section 2D. *This is probably the basis of the 8% impairment rating of April 1999.*

*I did not receive a copy of that impairment rating and do not know the findings of the evaluating physician or any ranges of motion measurements.*

*Whether the surgery of December 2005 contributed to the loss of motion cannot be determined without objective measurements taken with the examination of April 1999.*

### Conclusion

1. The impairment rating of 21% is correct, *based on the examination finding of January 8, 2007*. As the SORM noted, the certifying examination is a component of the impairment rating.

2. The correctness of any prior impairment rating is unknown and this designated doctor was not requested by the DWC to comment on any prior impairment rating. . . .

The impairment rating estimate of 21% is correct based on my examination of January 8, 2007. . . .

(emphasis added). Thus, according to Dr. Smith's clarification letter, he could not determine whether the 2005 surgery contributed to Ramirez's loss of motion because he did not have Dr. Earle's report from the April 1999 examination, and did not know whether objective measurements were taken at that time or what those measurements were. It is unclear why Dr. Smith was not given Dr. Earle's April 1999 report to consider, but what is clear is that Dr. Smith explicitly stated that he could not know whether the 2005 surgery contributed to the loss of motion without knowing the results of the April 1999 examination.

Although Dr. Smith did not have the benefit of Dr. Earle's April 1999 report, Dr. Earle's report, at SORM's request, was admitted in evidence at trial. The report reflects that Dr. Earle did indeed take objective measurements in April 1999. In his report, Dr. Earle concluded the following:

> Clinically: Lumbar flexion motion, extension, and left lateral bend, which was taken with double inclinometer system, and is recorded on the chart. Straight leg raising on the right is recorded at 70°, and *it invalidates the flexion/extension motions*. On examination of lower extremities (EHL, EDC, peroneals, gastroc, soleus) – bilaterally . . . grade 5. No obvious weakness remaining. He achieves full extension at the knee. Full flexion of the knee, no resistance at all. Hip abduction, external rotation through 45°. Internal rotation greater than 35°. Full extension.
>
> Assessment: He is at MMI, as of today. Based on the AMA Book of Ratings, intervertebral disc, operated on disc, with residual symptoms, lumbar spine, he has 80%. His symptoms are tolerable, but he still has residual symptoms associated with any increased activity.
>
> Plan: He is placed on restriction, where he is not to do any heavy repetitive lifts. I told him occasional lifts he can tolerate, but he will become symptomatic from it, and I gave him up to 75 pounds. The patient is to return to see me on an as needed basis. His MMI, based on Table 49, is an 8% impairment, surgically treated disc, with residual symptoms.

(emphasis added). Like Dr. Smith, Dr. Earle assigned Ramirez an impairment rating based on Ramirez's surgically treated disc. However, unlike Dr. Smith, Dr. Earle did not assign Ramirez any impairment based on loss of motion, determining that some of Ramirez's measurements "invalidated" others.

We hold that Dr. Smith's report is unreliable. Dr. Smith wrote in his clarification letter that he had not received a copy of Dr. Earle's report and could not determine whether the surgery of December 2005 contributed to the loss of motion without objective measurements taken with the examination of April 1999. The record reflects that these objective measurements were taken with the examination of April 1999. Thus, on its face, Dr. Smith's clarification letter admits that

Dr. Smith could not determine whether the 2005 surgery contributed to Ramirez's loss of motion. Therefore, Dr. Smith's opinion is unreliable and should not have been considered by the jury.

As noted previously, in a judicial review case, the Texas Workers' Compensation Act requires that the trier of fact adopt one of the impairment ratings assigned by one of the doctors in the underlying administrative case. *See* TEX. LAB. CODE ANN. §§ 408.125(c), 410.306(c) (Vernon 2006); *Samudio*, 2010 WL 457482, at \*8. Here, there were two doctors who assigned two different MMI dates and impairment ratings: Dr. Earle found clinical MMI on April 5, 1999, with an 8% impairment rating; and Dr. Smith found a statutory MMI date of June 27, 2000, with a 22% impairment rating. However, because Dr. Smith's findings were unreliable and should not have been considered by the jury, the jury would have had no choice but to adopt Dr. Earle's clinical MMI date and impairment rating. *See Samudio*, 2010 WL 457482, at \*8; *Bell*, 2009 WL 3353638, at \*4; *Harris County*, 132 S.W.3d at 146; *Tex. Mut. Ins. Co.*, 119 S.W.3d at 887.

### CONCLUSION

We reverse the judgment of the trial court and render judgment that Ramirez reached MMI on April 9, 1999, with an impairment rating of 8%, as certified by Dr. Earle.[5]

Karen Angelini, Justice

---

[5] We note that we are reversing the entire judgment, including the award of attorney's fees to Ramirez's attorney, because Ramirez, having lost this appeal, is not a prevailing party. Thus, SORM is not required to pay Ramirez's attorney's fees. *See* TEX. LAB. CODE ANN. § 408.221 (Vernon 2006).